UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MCRS, INC., a Michigan Corporation,

        Plaintiff,

v.

                                                Case No. 11-14590
                                                Honorable Denise Page Hood

COLONEL KRISTE KIBBEY ETUE,
Director of the MICHIGAN STATE
POLICE, and FIRST LIEUTENANT JOEL
ALLEN, an individual, and TROOPER
RENE GONZALEZ, an individual, and
TROOPER CHRISTOPHER GRACE, an
individual, and TROOPER RAYMOND
MATTHEWS, an individual, and CARY
ROBINSON, an individual,

        Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

I.      **INTRODUCTION**

        This matter is before the Court on Defendant's Motion to Dismiss **[Docket No. 8, filed November 29, 2011]**. Oral arguments were heard on January 30, 2012. This matter has been fully briefed and is now appropriate for determination. For the reasons stated below, Defendant's motion to dismiss is **GRANTED**.

II.     **STATEMENT OF FACTS**

        Plaintiff, MCRS, Inc., is a Michigan corporation doing business in automobile sales and rentals. On October 18, 2011, it filed the present action alleging the following under 42 U.S.C. § 1983: unlawful seizure of property in violation of the Fourth Amendment's due process clause, violation of the equal protection clause of the Fourteenth Amendment, and Colonel Kriste Etue

and First Lt. Joel Allen's conduct, under color of state law, authorized a policy of indifference toward the mentioned constitutional rights.[1] Defendant now moves to dismiss Plaintiff's complaint in its entirety.

John Conely, the president and manager of MCRS, Inc. purchased a 2009 Chevrolet Avalanche from Shaheen Chevrolet for $28,000. Compl. ¶ 13; Def.'s Ex. A, B. Conely purchased the vehicle with a check from Conely Rent-A-Car on August 16, 2011. Def.'s Ex. B. Title was transferred to MCRS, Inc. on August 16, 2011. Compl., Ex. 1, 2. Before Shaheen was able to cash the check, Conely stopped payment due to a payment dispute. Compl. ¶ 16; Def.'s Ex. A. On August 26, 2011, Shaheen contacted Kwik Repo, Inc., requesting that they repossess the vehicle. Compl., ¶ 16, Ex. 3; Def.'s Ex. A.[2]

On August 26, 2011, using a dummy key from Shaheen, William Norton and Anthony Benavides of Kwik Repo, Inc. located the vehicle in the back of Conely Auto Sales' parking lot and connected it to a tow truck. Compl. ¶ 18, Ex. 4, 5; Def.'s Ex. A. They did not attempt to contact anyone before hooking the vehicle from the rear; Benavides steered the Avalanche while Norton drove the tow truck. *Id.* Upon seeing that the car was being towed from the parking lot, Conely followed the tow truck in a separate vehicle. Compl. ¶ 19, Def.'s Ex. A. Norton pulled into a parking lot, apparently to secure the vehicle properly. Compl. ¶ 21, Ex. 5; Def.'s Ex. A. Conely swerved into the tow truck, running the tow truck off the road and onto the curb. Def.'s Ex. A; Compl. Ex. 5. Conely called 911 after the vehicle stopped. Compl. ¶ 22, Def.'s Ex. A.

---

[1] Defendants argue that any claims for declaratory relief are barred by the Declaratory Judgment Act. Defendants also argue that Plaintiff is attempting to litigate the ownership of the vehicle in several forums. From a close reading of the Complaint, it does not appear that Plaintiff has asked for declaratory relief specifically. Plaintiff "requests that this Honorable Court enter judgments against Defendants in an amount consistent with the damages sustained; award MCRS its attorney fees and costs …; and grant MCRS such other and further relief as this Honorable Court deems just and equitable." Plaintiff does not mention declaratory relief until its response. This inquiry appears premature and irrelevant to the present discussion.
[2] The authorization to repossess the vehicle was on a handwritten fax. However, the form of the request is irrelevant to this discussion.

Michigan State Troopers, Renee Gonzalez, Christopher Grace, Raymond Matthews, and Cary Robinson ("Defendant Troopers"), arrived on the scene. Compl. ¶ 23; Def.'s Ex. A. Plaintiff argues that Kwik Repo employees did not provide Defendant Troopers with any documents showing their interest in the vehicle. Compl. ¶ 24. The police report attached to the Complaint and Defendant's motion to dismiss indicates that Benavides provided documents regarding the repossession of the vehicle (Defendant Troopers indicated that the documents contained a copy of the stopped check and were ten pages in length). Compl. Ex. 5; Def.'s Ex. A. Conely provided Defendant Troopers with a copy the original State of Michigan vehicle title. Compl. ¶ 25. Trooper Rene Gonzalez indicated that she did not need the vehicle title. Compl. ¶ 26. Conely alleges that he attempted to report the stolen vehicle to Defendant Troopers and requested that the vehicle be impounded but was verbally denied. Compl. ¶¶ 27, 28. Conely was arrested for felonious assault with a motor vehicle. Compl. ¶ 29; Def.'s Ex A.

Plaintiff alleges that Defendant Troopers removed the vehicle's key from Conely's pocket without his permission after Conely was arrested and handcuffed and gave the keys to one of the Kwik Repo employees. Compl. ¶¶ 31-34. The vehicle was turned over to Kwik Repo. Compl. ¶ 35, Ex. 5; Def.'s Ex. A. Norton testified at the preliminary hearing that Conely gave the key to him when Norton requested it. Def.'s Ex. D, p. 66. The Livingston County District Court assumed for the preliminary hearing that Plaintiff owned the vehicle when it was repossessed and that Kwik Repo did not have a court order to repossess it. Def.'s Ex. D, pp. 92-94. The court also found that there was probable cause that Plaintiff committed felonious assault with a motor vehicle. *Id.* A hearing regarding the ownership of the Avalanche was held on November 30, 2011 before Judge Paula J. M. Manderfield in Ingham County Circuit Court.

## III.     STANDARD OF REVIEW

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. The Court will accept all the factual allegations as true and review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs*, 510 F.3d 631, 634 (6th Cir. 2007). To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss is appropriate when the plaintiff is unable to prove any set of facts to support his claim that he is entitled to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Bell Atlantic*, 550 U.S. at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Furthermore, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

Defendants argue that Plaintiff attempts to convert its motion to dismiss into a motion for summary judgment by attaching exhibits to its response.[3] The Court agrees. Defendants have attached several exhibits to its motion to dismiss: the unredacted police report attached to Plaintiff's Complaint, the stopped payment check referenced in the police report, title assignment referenced in the police report, preliminary hearing transcript and case summary. Plaintiff, however, has attached two depositions and an affidavit from John Conely. These matters are not directly referenced or part of Plaintiff's Complaint. Accordingly, the Court will analyze Defendants' motion under Rule 12(b)(6) and will not consider matters that are outside of the

---

[3] In Plaintiff's defense, Defendants do not include a separate section outlining the standard of its motion. From the caption, reply, references to *Iqbal* in the brief, the Court believes that Defendants have produced a motion to dismiss.

pleadings. *See Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (noting that the court may consider exhibits attached to the complaint or defendant's motion to dismiss, public records, and items in the record of the case if they are referred to in the complaint and central to its claims without making the motion one for summary judgment).

## IV.   ANALYSIS

To maintain an action under 42 U.S.C § 1983, a plaintiff must demonstrate that he or she was deprived of a right guaranteed by the Constitution or laws of the United States by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978).

### A.  Qualified Immunity

Defendants argue that they are entitled to qualified immunity. Plaintiff counters that Defendants are not entitled to qualified immunity because their conduct went beyond an attempt to keep the peace and was "self-help repossession without a court order."

The doctrine of qualified immunity provides that a government official that engaged in discretionary functions is "shielded from liability [and, indeed, from suit] for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known*." Cope v. Heltsley*, 128 F.3d 452, 457 (6th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). Qualified immunity "is both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Mitchell v. Forsyth,* 472 US 511, 526 (1985)).

Government officials acting in their official capacity are entitled to qualified immunity if two factors are met: (1) whether the facts, taken in a light most favorable to the plaintiff, demonstrate a constitutional violation; and (2) whether the constitutional right is clearly

established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court must first determine whether a constitutional violation occurred. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). Second, the Court must consider whether the constitutional violation was clearly established. *Id.* Finally, the Court determines "whether there the plaintiff has alleged sufficient facts … to indicate that what the official allegedly did was objectively unreasonable in light of clearly established constitutional rights." *Id.* The asserted right cannot be abstract, but must be "clearly established" and "particularized." *Cope*, 128 F.3d at 458 (quoting *Anderson v. Creighton*, 483 US 635, 640 (1987)). Specifically, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 at 640. To determine whether the right is clearly established, the Court must first look to the Supreme Court, then the Sixth Circuit and other courts within the Sixth Circuit, and then to decisions of other courts. *Watkins v. Kanitz*, 2004 U.S. Dist. LEXIS 28325 (W.D. Mich. Sept. 24, 2004).

The Court does not consider the subjective good faith of the official but rather judges the official's conduct by a standard of "objective legal reasonableness." *Cole*, 128 F.3d at 458 (quoting *Harlow,* 457 U.S. at 819). In sum, the relevant inquiry is whether a reasonable official in the defendant's position would understand their action to have violated a constitutional right. *Anderson*, 483 U.S. at 640. The burden falls on the defendant to prove that qualified immunity does not apply. *See Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." *Saylor v. Board of Educ.*, 118 F.3d 507, 515-516 (6th Cir. 1997) (quoting *Lassiter v. Alabama A&M Univ., Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc) (emphasis in original)). The Court

should determine whether Plaintiff's complaint alleged a clearly established constitutional right before permitting discovery to continue. *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004).

### 1. Fourth Amendment Seizure

Here, Plaintiff alleges that a police officer's participation in an unlawful repossession violates the Fourth Amendment as an illegal seizure. Plaintiff argues that Defendant's conduct surpassed what was necessary to keep the peace.  Michigan allows a secured creditor to resort to self-help repossession when doing so would not breach the peace. MICH. COMP. LAWS § 440.9609. Under the common law, a seller may repossess goods that were obtained by fraud unless there is a good faith purchaser for value. *Pinkerton Bros. Co. v. Bromley*, 87 N.W. 200, 201 (Mich. 1901) ("When goods are obtained by fraud, they may be reclaimed by the seller.") Common law fraud requires proof that (1) the defendant made a material misrepresentation regarding past or existing fact; (2) the representation was false; (3) defendant made the misrepresentation knowing that it was false or recklessly; (4) the representation was made intending for the plaintiff to rely upon it; (5) plaintiff reasonably relied on it; and (6) the plaintiff was injured. *Cummins v. Robinson Twp*., 770 N.W.2d 421, 435 (Mich. Ct. App. 2009).

It does not appear that Plaintiff has asserted a constitutional violation here. Plaintiff admitted that he had not paid for the vehicle; he stopped payment after remitting the check. The record also shows that Plaintiff engaged in such activity in order to obtain payment for a debt. Shaheen was entitled to engage in self-help under Michigan law in order to obtain the vehicle after it became apparent that Plaintiff had no intention of paying for it. Kwik Repo already had possession of the vehicle when the police arrived at the scene. Kwik Repo presented the authorization to repossess the vehicle and canceled check at the scene. If Defendant Troopers had given the keys to Kwik Repo or Plaintiff had voluntarily presented them is of no incidence.

Their actions were meant to keep the peace. The record shows that Plaintiff had driven recklessly to pursue Kwik Repo and had swerved into and hit the tow truck. Defendant Troopers actions were reasonable in light of these circumstances. A reasonable police officer that was presented with documentation at the scene and interviewed witnesses that alleged that Plaintiff had committed vehicular assault would not believe that their actions were unlawful.

### 2.   Equal Protection

Defendants contend that Plaintiff has not alleged a sufficient factual basis to support an equal protection claim. Defendants argue that Plaintiff is not a member of a protected class and, therefore, the Defendants actions should be reviewed under rational basis scrutiny.

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 341 (6th Cir. 1990) (quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989) (en banc)). Plaintiff has not sufficiently alleged an equal protection violation. Here, Plaintiff has not alleged that MCRS is part of protected class nor how it was treated different than similarly situated corporation. MCRS, Inc. is a Michigan corporation. As a result, the Court would only be required to determine whether Defendants' actions passed rational scrutiny. Defendants would likely meet their burden. Plaintiff has failed to state an equal protection claim.

### 3.   Substantive Due Process

Plaintiff further contends that Defendants refusal to investigate the taking of the vehicle deprived him of substantive due process. Given that Plaintiff has not sufficiently pled facts to support a constitutional violation, he cannot now claim that Defendants were required to investigate his claim that the vehicle was stolen. *See Smallwood v. McDonald*, 805 F.2d 1036,

8

1986 U.S. App. LEXIS 32073 (6th Cir. Oct. 9 1986) ("The failure to conduct a full and fair investigation and prosecution of an alleged crime does not state a claim unless there is a violation of another recognized constitutional right"); *Provost v. Dillard*, 1994 U.S. App. LEXIS 11738 (6th Cir. May 17, 1994) ("the failure of a police officer to investigate crimes of violence against a person does not state a civil rights claims unless another recognized constitutional right is involved").

### 4.  False Arrest or Search

Defendants argue that Plaintiff cannot allege false arrest or search incident to that arrest because the district court found probable cause to believe that Plaintiff committed felonious assault. Defendants contend that Plaintiff is barred by the *Rooker-Feldman* doctrine, *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and collateral estoppel from litigating any issues in the pending state action. Looking closely at the Complaint, it does not appear that Plaintiff has alleged that the arrest was false or that the search was improper incident to the arrest. Additionally, Plaintiff does not contest Defendants' arguments in its response. Defendants have not indicated exactly what issues Plaintiff seeks to address regarding his constitutional claims that are pending or final in the state court. These points do not appear to be relevant to the current discussion. It appears that the Defendants are entitled to qualified immunity and that this case should be dismissed.

### B.  Supervisory Liability

Defendants further allege that Plaintiff cannot sustain a claim against Colonel Kriste Kibbey Etue and First Lieutenant Joel Allen, neither of whom were actually involved in the incident between Mr. Conely and the police. Supervisory liability will not attach based on a theory of vicarious liability. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At a

minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id*. *In Rizo v. Goode*, the Supreme Court held that "[t]here must be a direct causal link between the acts of individual officers and the supervisory defendants." *Rizo v. Goode*, 423 U.S. 362, 370-71 (1976).

Notwithstanding the fact that these officials appear to be entitled to qualified immunity, Plaintiff has not indicated in his motion the exact actions that Colonel Etue and First Lt. Allen took that resulted in an alleged constitutional violation to Plaintiff. The Complaint merely states that "Etue and/or Allen, acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation and enforcement of policies, practices, and customs, establishing a de facto police of deliberate indifference to the rights of parties such as MCRS." Under the heightened pleading requirements of *Iqbal*, this is insufficient. Plaintiff has failed to state a claim for supervisory liability.

## V.    CONCLUSION

**IT IS ORDERED** that Defendant's Motion to Dismiss **[Docket No. 8, filed November 29, 2011]** is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  February 29, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 29, 2012, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager